# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| ANN HAWKINS, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  4:06-CV-01003-RDP** |
| | } | |
| ALFA MUTUAL INSURANCE | } | |
| COMPANY, | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant Alfa Insurance Company's ("Alfa") Motion for Summary Judgment (Doc. #25), filed June 16, 2008.  Plaintiff filed her response brief (Doc. #31) on July 11, 2008.  Defendant filed its reply brief (Doc. #33) on July 28, 2008, bringing the issues raised by Defendant's motion for summary judgment under submission.

Plaintiff filed this case on May 24, 2006 asserting claims against Defendant for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (2006), and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615 (1993).  (Doc. #1).  In her Response Brief, Plaintiff agreed to the dismissal of her FMLA claim.  (Doc. #31 at 1).   For the reasons outlined below, the court finds that Alfa's Motion for summary judgment is due to be granted.

## I.    Relevant Facts[1]

Defendant is a full service insurance company headquartered in Montgomery, Alabama. (Doc. #27 Ex. L – Hurtt Decl. at ¶ 1).  In Alabama, the sales territories are divided into regions, and

---

[1]If facts are in dispute, they are stated in the manner most favorable to Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

within each region there are insurance sales offices known as Service Centers. (*Id*. at ¶ 2). In each Service Center, there is generally an Agent who is responsible for selling insurance, and a Customer Service Representative ("CSR") who provides support to the Service Center and Agent, particularly with the administrative functions of selling insurance. (*Id*.). Where a Service Center has more than one Agent and CSR, there is a Supervising CSR who is primarily responsible for the day to day work flow of the Service Center as well as assisting with training the other CSRs. (*Id*.).

The Alfa Service Center located in Henagar, Alabama is part of the district managed by District Manager Tim Timmons (DOB: xx/xx/1955), who is primarily responsible for supervising the Agents, and District Supervisor Vicky Holt (DOB: xx/xx/1960), who is responsible for supervising the CSRs. (Doc. #27 Ex. C – Hurtt Depo. Vol. II at 9; Ex. F – Holt Depo. Vol. I at 17, 24; Ex. I – Timmons Depo. at 7, 15). In 2004, Timmons reported to J. C. Ralph (DOB: xx/xx/1940) (Senior Vice-President of the North Alabama Region) and Holt reported to Shelia Hurtt (DOB: xx/xx/1957) (Regional Administrator North Alabama Region). (Doc. #27 Ex. B – Hurtt Depo. Vol. I at 35, 39, 80; Ex. F at 24; Ex. I at 13; Ex. L at ¶ 3).

Shelia Hurtt hired Plaintiff Ann Hawkins (DOB: xx/xx/1948) in September 1978. Plaintiff worked as a CSR, and then later as a Supervising CSR, at the Henagar Service Center throughout her employment with Defendant. (Doc. #27 Ex. A – Pl. Depo. at 16, 26, 28-29; Ex. B at 33; Ex. L at ¶ 2). Plaintiff received updates to Defendant's employee handbook throughout her employment and reviewed the handbook, including Defendant's Work Records/Time Clock, Standards of Conduct, Equal Employment Opportunity, Open Door and Harassment policies. (Doc. #27 Ex. A at 33-34, 56-61 & Exs. 2-7). Starting in February 1999, Vicky Holt became Plaintiff's supervisor. (Doc. #27 Ex. A at 33; Ex. F at 24).

2

In 2002, Defendant began using a computer based time keeping system called Kronos. (Doc. #27 Ex. A at 78; Ex. C at 56). Plaintiff was trained on Kronos, receiving the same training that every other CSR in the region received. (Doc. #27 Ex. A at 81; Ex. B at 144). Defendant offered her additional training and requested that Plaintiff re-read the pertinent materials. (*Id*.). There were at least two individuals at Defendant's home office who were available to assist Plaintiff with any Kronos related questions. (Doc. #27 Ex. A at 92 & Ex. 14). Plaintiff requested additional Kronos training from Holt, but did not receive any. (*Id*. at 82). Plaintiff understood that she was required to submit the time she worked every two weeks and approve her time in the Kronos system. (*Id*. at 85-86). Kronos automatically populated base work hours for a CSR, and the CSR was responsible for approving her time by the last day of the pay period (Wednesday). (Doc. #27 Ex. C at 56-57). If a CSR was out of the office on the last day of the pay period (for example, on a leave of absence), the District Supervisor would complete and approve the CSR's time. (*Id*. at 64, 67; Doc. #27 Ex. F at 206, 214; Ex. G – Holt Depo. Vol. II at 19-20, 24-25, 104-105).

On July 22, 2002, Plaintiff received a Supervisor's Report for failing to write out a receipt for a customer and for failing to report to work or report absences. (Doc. #27 Ex. A at 92-93 & Ex. 15). The Supervisor's Report provided that further violations of company policy could result in the termination of her employment. (*Id*.).

On March 4, 2004, Plaintiff's supervisor, Holt, met with Plaintiff about properly recording her time, as well as other performance deficiencies. (Doc. #27 Ex. A at 99 & Ex. 16). Admittedly, prior to this meeting, Plaintiff had taken personal time – not worked the entire workweek – yet did not adjust her timesheet, which resulted in her being overpaid. (*Id*. at 99-101 & Ex. 16). Holt explained in this meeting that Plaintiff was the supervising CSR and, as such, it was Plaintiff's

3

responsibility to set the example for her Service Center and that immediate sustained improvement in her job performance must be seen or further action, including termination, would be taken.  (*Id*. at 101-02 & Ex. 16).

Although she claims it was not intentional, Plaintiff failed to accurately complete her time sheet in April 2004 when she failed to report time away from the office after she had requested paid time off that was approved.  (*Id*. at 108; Doc. #27 Ex. B at 102-03).  Holt issued Plaintiff a Supervisor's Report in May 2004 for this failure by Plaintiff to accurately complete her time sheet. (Doc. #27 Ex. A at 106-08 & Ex. 17; Doc. #27 Ex. F at 154-55).  This report stated:

> Ann Hawkins is to complete her time on a daily basis to prevent any future problems with reported time versus actual time worked.  Ann understands that any future falsification of reported time versus actual hours worked could result in immediate action, up to and including termination. . . . There will be no future warnings of this nature afforded to Ann.

(Doc. #27 Ex. C. at Ex. 2).

Plaintiff continued to have problems with the Kronos system after the May 2004 Report, sometimes failing to approve her time worked; however, there were no reported instances after May 2004 of Plaintiff falsifying her time records.  (Doc. #27 Ex. A at 123-26, 140-41 & Exs. 19-20; Ex. B at 95, 117, 143, 136-37, 172; Ex. F at 150-51, 153, 190-91, 281-82; Ex. G at 113-114; Doc. #29 Ex. 1- Hawkins Dec. at ¶ 2).  The parties dispute whether failure to approve time in Kronos was treated as a disciplinary issue prior to Plaintiff's termination.  (Doc. #27 Ex. E at 127-35; Ex. G at 62, 112; Doc. #29 Ex. 1 at ¶ 5).

On October 12, 2004, Susie White, the Employee Relations and Training Manager, spoke to Holt about the May 2004 Report.  (Doc. #34 Ex. Pl's Ex. 2).  Her hand-written note at the bottom of the report reads: "8/12/04 – Followed-up w/ Vicky [Holt].  She has not had any significant

4

problems w/ Ann, although she sometimes forgets to approve her time card.  No further follow-up necessary." (*Id.*).

In September 2004, Plaintiff failed to approve her time and Holt sent her an email which read: "This is my final reminder to you to approve your timesheet on a routine basis.  Failure to approve your timesheet as scheduled in the future may result in a delay in processing your payroll amount." (Doc. #27. Ex. G at Ex. 17).  Shelia Hurtt considers a CSR's failure to approve her time a violation of company policy, though Plaintiff disputes that it is.  (Doc. #27, Ex. B at 133-34, 140; Ex. C. at 96-100; Ex. E at 107-08).

On October 27, 2004, Plaintiff failed to approve her time, a problem that was neither brought to Plaintiff's attention, nor corrected before November 5.  (Doc. #27 Ex. E at 129-31; Ex. F at 200; Ex. G at 62-63, 112; Doc. #29 Ex. 1 at ¶ 5).  Plaintiff argues that a failure to approve time is not the equivalent of failing to report time daily.  (Doc. #29 Ex. 1 at ¶ 4).  Plaintiff also asserts that approving time is the act of reviewing the time that has been entered on a daily basis at the end of the pay period to make sure it is correct before submitting it for payment.  (*Id.*).

Hurtt made the decision to terminate Plaintiff and gave Plaintiff the option to retire, citing Plaintiff's problems related to reporting her time.  (Doc. #27 Ex. B at 81-83, 93, 97 191; Ex. C at 13; Ex. D at 21, 25, 28, 34, 41, 45-46, 50; Ex. E at 50, 52, 102, 128; Ex. F at 181, 185-186, 190; Ex. J at 24).  However, Plaintiff contends that the decision to terminate her is primarily attributable to Holt, not Hurtt.  (*See* Doc. #31 – Pl. Response Brief at 11-12).  On October 27, 2004, Holt, acting in accordance with her September 2004 email, did not remind Plaintiff to approve her time as she had in the past, and instead initiated disciplinary action.  (Doc. #27 Ex. E at 127-31; Ex. F at 200, 275-76; Ex. G at 62-63, 112 & Ex. 17; Doc. #29 Ex. 1 at ¶ 5).  Holt prepared the May 2004

Supervisor Report, communicated with White in Alfa Human Resources in August 2004, prepared and signed the termination memo, and was present at the termination meeting.  (Doc. #27 Ex. F at 135, 151-52, 159, 183, 276; Ex. A at 148, 158).  Holt recommended terminating Plaintiff to Hurtt.  (Doc. #27 Ex. E at 52-53).  Hurtt discharged Plaintiff based on information provided by Holt.  (*Id*. At 106; Doc. #27 Ex. D at 73-74, 78-79, 82-83).

In her deposition, Hurtt admitted that "no one would be terminated for forgetting to approve their time," and further testified that she approved Plaintiff's termination based on her failure to report accurate time and failure to report (approve) time, though it is unclear if Hurtt's factor of "failure to report accurate time" occurred before or after the May 2004 Report.[2]  (Doc. #27 Ex. E at 85-87).  The issue of failure to report time is not contained in the employee handbook, and would be considered a general work performance issue.  (Doc. #27 Ex. J at 91-93; Ex. H at 34).  Plaintiff did not receive a written report after the May 2004 Report that indicated that failure to approve her time would result in disciplinary action.  (Doc. #27 Ex. E at 141-44).  Defendant contends that Plaintiff was terminated for ongoing problems with her time reporting in the Kronos system; however, Plaintiff asserts that she was terminated for forgetting to approve her time card on October 27, 2004.  (Doc. #27 Ex. C at 109, 118; Ex. E at 7-8, 83-85, 144, 154; Ex. F at 166, 271; Ex. G at 70; Ex. A at 158).  The memo given to Plaintiff referencing her termination conference held on November 5, 2004, reads:

> Reason for the conference was failure by Ann Hawkins to approve her timesheet in the Kronos system for the pay period ending 10/27/2004. . . . As of 11/5/2004, Ann had not contacted anyone to verify her timesheet was

---

[2]Plaintiff contends that Holt presented Hurtt with a fabricated claim of time falsification based on a computer glitch.  (Doc. #29 Ex. 1 at ¶ 2), Doc. #27 Ex. F at 153, 281-82).

correct or as a notification that she failed to approve her timesheet.  She acknowledged in the meeting she failed to approve her timesheet.

In reference to the Supervisors Report dated 5/11/04, Ann agreed to complete her timesheet on a daily basis.  She has failed to comply with this agreement.

(Doc. #27 Ex. B at Pl's Ex. 1).  At the meeting, Hurtt and Holt explained to Plaintiff that she could either retire at the end of the year, or her employment would be terminated.  (*Id.*; Doc. #27 Ex. A at 55-56, 151-152 & Ex. 23; Ex. B at 79-80; Ex. E at 105).  Plaintiff chose to work through the end of the year and then retire.  (Doc. #27 Ex. G at 71).  Thereafter, Defendant paid for Plaintiff to have a retirement party where Plaintiff was allowed to invite her family and friends.  (Doc. #27 Ex. A at 186-87).

In December 2004, Plaintiff e-mailed Tom Bryant, Vice President of Human Resources, seeking a review of the decision related to her employment.  (Doc. #27 Ex. A at 156 & Ex. 27;  Ex. H at 6, 11).  Nowhere in this e-mail did Plaintiff assert she was being forced to retire based on her age.  ( Doc. #27 Ex. A at Ex. 27).  Upon receipt of the e-mail, Bryant forwarded the email to Susie White, who corresponded with Plaintiff and explained to her that she was not asked to resign based on a single event, but rather that she had been previously warned regarding her time reporting problems and the consequences.  (Doc. #27 Ex. H at 11-14; Ex. J at 124-25 & Pl. Ex. 6).  Plaintiff was replaced by Mary Scott (DOB: xx/xx/1981), who previously had worked as a part-time CSR for Defendant.  (Doc. #27 Ex. C at 7; Ex. F at 27, 118; Ex. M – Holt Decl. at ¶ 2).

Janet Smith (DOB: xx/xx/1973) and Glenda Pearce (DOB: xx/xx/1958) were two other CSR's in the Region under Hurtt's supervision who were terminated for falsification of time records.[3]  (Doc. #27 Ex. C at 37-40; Ex. D at 114; Doc. 36 Ex. 2a; Ex. 2c).

Plaintiff claims that the reason given for the end of her employment was "bogus." (Doc. #27 Ex. A at 42).  Plaintiff points to Hurtt and Holt as the individuals who discriminated against her based on her age and knows that they are younger than her, but does not know their respective ages. (*Id*. At 42-43, 176).  Neither Hurtt nor Holt ever made any age-related comments to Plaintiff.  (*Id*. at 194).  The only age-related comments that Plaintiff claims were made to her were jokes told by an agent and an adjuster a few years before the end of her employment.  (*Id*. at 192-94).  The only individuals Plaintiff identified as having similar problems to her with time records were Carol Tipton (xx/xx/1946) and Linda Garrett (xx/xx/1947).  (*Id*. at 137; Doc. #27 Ex. M at ¶ 2).  Plaintiff claims that Carol Tipton falsified her time sheet and was not fired. ( Doc. #27 Ex. A at 164-65).  However, Tipton, who is older than Plaintiff, was, like Plaintiff, given the opportunity to retire rather than be terminated for a time reporting incident.  (Ex. M at ¶ 2, Doc #36 Ex. 2f).  Jennifer Millican, an under-age-forty employee, was disciplined on June 22, 2005 (after Plaintiff filed her EEOC charge). (Doc. #27 Ex. F at Ex. 13).  The memo documenting this discipline was not a formal Supervisor's Report and stated only that the failure to approve would be "considered on her next appraisal."  (*Id*.).

---

[3]Evidence submitted under seal has been considered by the court for purposes of summary judgment, but because the parties have agreed that it should be confidential, it will not be recounted in detail here.  Three employees older than Plaintiff were terminated for more serious violations of company policy.  Two employees younger than Plaintiff were terminated for violations somewhat similar to Plaintiff's.  Two other employees, one significantly younger than Plaintiff and the other whose age is unknown were disciplined, like Plaintiff, for one-time violations, but had no subsequent or continuing violations.  Thus, the sealed Rule 56 record does not suggest that there is a "comparator" that Plaintiff can point to in support of her claim.

In September 2004, Plaintiff and Holt were meeting to discuss time reporting when they learned that each had a printout of Plaintiff's time from Kronos for the prior two-week period and that these two printouts reflected different information.  (Doc. #27 Ex. E at 6, 16, 19-20; Ex. F at 136-38, 229-30; Ex. G at 73; Ex. I at 23-26, 28-29).  Upon this discovery, Holt called Hurtt, who in turn called Alfa's Payroll Systems Administrator, Terrence Alexander, to inquire as to how the two print outs could differ.  (Doc. #27 Ex. E at 21-22; Ex. K – Alexander Depo. at 5, 45).  Alexander and Hurtt learned through this research that a CSR had the ability in the Kronos system to remove an approval of time and change their time.  (Doc. #27 Ex. E at 14, 23-24;  Ex. F at 225-27, 245-46; Ex. K at 44, 48).  After learning of this computer glitch, Alexander went into the Kronos system and removed the CSR's ability to do this.  (Doc. #27 Ex. E at 25-26; Ex. F at 230, 246, 266; Ex. K at 48-49).  Despite the fact that no one said anything to Plaintiff about firing her as a result of the meeting where the glitch was discovered and though she readily admits that she has no evidence that Holt ever altered any time records, Plaintiff claims that Holt altered the time sheet at issue in the meeting in an effort to fire her.  (Doc. #27 Ex. A at 207, 211-13).  Later, it was learned that Plaintiff and Holt were apparently in Kronos at the same time and that both of them made corrections to Plaintiff's time, but that only Plaintiff's changes (prompted by Holt's email that she had failed to approve her time) were saved.  (Doc. #27 Ex. G at 33, 39-40, 43; Ex. K at 90).

Plaintiff filed an EEOC Charge on April 29, 2005.  (Doc. #27 Ex. A at 172 & Ex. 29).  At Plaintiff's request, the EEOC issued a Notice of Right to Sue in March 2006.  (*Id*. at 177-78 & Ex. 30).  Plaintiff filed the Complaint in this action on May 25, 2006 asserting claims of age-based discharge and FMLA retaliation.  (*Id*. at 178 & Ex. 31).

## II.      Standard on Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination.  Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered

10

by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

**III.    Analysis**

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Id.*; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). Recognizing that "the question facing triers of fact in discrimination cases is both sensitive and difficult," and that "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, (1983), where, as here, a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA, the Eleventh Circuit employs a burden-shifting scheme based on the framework articulated by the U.S. Supreme Court in *McDonnell Douglas*. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). "Initially, the plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail,

the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." *Id.* (*citing Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995)).

It is clear that Plaintiff has established a *prima facie* case.  In an ADEA case involving discharge, a plaintiff may establish a *prima facie* case by showing:

> (1) that [s]he was a member of the protected group of persons [over the age] of forty . . .; (2) that [s]he was subject to adverse employment action; (3) that a substantially younger person filled the position that [s]he sought or from which [s]he was discharged; and (4) that [s]he was qualified to do the job for which [s]he was rejected.  *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (stating that an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age 40).

*Turlington*, 135 F.3d at 1432; *see also Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996). It is undisputed that Plaintiff is a member of the protected group, was terminated, was replaced by a twenty-four-year-old, and was qualified for the position she previously held.  The court finds that Plaintiff has met her burden of establishing a *prima facie* case, shifting to Defendant the burden to respond by articulating a legitimate, nondiscriminatory reason for its actions.

Defendant's burden of offering a legitimate, nondiscriminatory reason for its action is one of production, not persuasion.  *Crawford v. Johnson*, 133 Fed.Appx. 674, 675 (11th Cir. 2005) (*citing Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).  "The proffered justification need only be one that 'might motivate a reasonable employer.'" *Id.* (*citing Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)).  Defendant identifies Plaintiff's problems with time reporting in the Kronos time keeping system as its reason for terminating Plaintiff, satisfying this burden.

12

At this point, Plaintiff must establish that Defendant's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination.    The Eleventh Circuit has clearly articulated Plaintiff's obligation. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman* 229 F.3d at 1030.  Furthermore,

> [f]ederal courts "do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (*quoting Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted)); *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

*Chapman*, 229 F.3d at 1030.  It is not the court's responsibility to examine Alfa's decision for fairness.  Absent any evidence of unlawful discrimination, Plaintiff's claim is due to be dismissed.

Upon examination of the record as a whole, the court finds that there is no genuine issue of material fact with respect to whether Plaintiff was terminated for a discriminatory reason.  To survive a motion for summary judgment, a plaintiff must present evidence sufficient to demonstrate a genuine issue of material fact exists as to the truth or falsity of the employer's legitimate, nondiscriminatory reason.  *Reeves*, 530 U.S. at 147; *St. Mary's Honor Center*, 509 U.S. at 509-11; *Combs*, 106 F.3d at 1530-32; *Howard*, 32 F.3d at 527-28.  The question is "whether the plaintiff has

demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538 (*quoting Sheridan v. E.I. DuPont de Numours and Co.*, 100 F.3d, 1061, 1072 (3rd Cir. 1996)).

Plaintiff asserts that she has demonstrated pretext in three ways: (1) "[A]n employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). (2) "[A]n employer's deviation from its own standard procedures may serve as evidence of pretext." *Id.* at 1299. (3) When an alleged nondiscriminatory reason is not brought to a plaintiff's attention, that may serve as evidence of pretext, as it suggests that the issue was not sufficiently serious to motivate the employer. *See Hinson v. Clinch County*, 231 F.3d 821, 831 (11th Cir. 2000). After reviewing each of these arguments, the court concludes they all miss the mark because the evidence of record simply does not support Plaintiff's contentions.

First, Defendant did not fail to clearly and consistently articulate its reason for discharge. Defendant repeatedly cited Plaintiff's ongoing time reporting problems as the reason for Plaintiff's termination. (Doc. #27 Ex. A at Exs. 23, 26; Ex. B at 81-83, 93, 97, 191; Ex. C at 13; Ex. D. At 21, 25, 28, 34, 41, 45-46, 50; Ex. E at 50, 52, 102, 128). In *Hurlbert*, the defendant employer articulated three different reasons for the plaintiff's termination: the plaintiff's disciplinary status, unacceptable job performance, and the results of two skills evaluations; however, the termination form only made reference to the skills evaluation. 439 F.3d at 1298. Given these varying reasons for the termination, along with other evidence, the *Hurlbert* court held there was evidence of pretext. In contrast to *Hurlbert*, Plaintiff was terminated for her time reporting problems, of which she was repeatedly

14

warned.  Defendant neither offered nor cited any other reasons for Plaintiff's termination.  As such, there is no shifting explanation here.  Plaintiff's first argument under *Hurlbert* fails.

Second, Plaintiff offers no evidence that Defendant deviated from its own standard procedures.  Plaintiff had been warned multiple times about her time reporting problems.  The May 2004 Report ended with the admonition: "There will be no future warnings of this nature afforded to Ann."  (Doc. #27 Ex. A at Ex. 17).  Despite that pronouncement, Plaintiff was given more leniency.  After sending Plaintiff several reminders to approve her time sheets, Holt emailed Plaintiff on September 15, 2004 warning: "This is my final reminder to you to approve your timesheet on a routine basis."  (*Id*. at Ex. 19).  Hurtt and Holt held a conference with Plaintiff on November 5, 2004 where they told her that she was being terminated for time reporting problems.  A memorandum outlining the content of the meeting was written and signed by Holt.  (*Id*. at Ex. 23).  The undisputed evidence of record is that Defendant acted in accordance with its standard procedures.  (Doc. #27 Ex. A at Exs. 17, 19, 23; Ex. M; Doc. #36 Exs. 2c, 2e, 2f)

Third, Plaintiff had been repeatedly warned and reminded, both orally and in writing, about her ongoing time reporting problems.  (Doc. #27 Ex. A at Exs. 16, 17, 19).  Plaintiff's suggestion based on *Hinson* that Defendant failed to bring the issue to Plaintiff's attention is not supported by the Rule 56 record.  Not only were Plaintiff's problems with Kronos brought to her attention before she was terminated, but also these problems were consistently cited as the reason for her termination both at the termination meeting and afterwards.  (*Id*. at Exs. 23, 26).

Viewing the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff has not presented adequate evidence that she was terminated for any reason other than her ongoing time reporting problems (of which she was repeatedly warned).  "Although termination may, to some,

seem a draconian response given the level of the Plaintiff's offense, the reasonableness of [Defendant]'s disciplinary policies are not a consideration." *Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000).  Defendant's actions with regard to Plaintiff were wholly consistent with its disciplinary policies and treatment of other employees.  There exists no evidence of pretext or discriminatory intent.  The evidence is such that no reasonable jury could return a verdict for Plaintiff.  Therefore, Defendant is entitled to judgment as a matter of law.

## IV.   Conclusion

For the reasons stated above,  Alfa's Motion for summary judgment is due to be granted.  The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and that Alfa is entitled to judgment as a matter of law.  The court will enter an order contemporaneously herewith granting Alfa's Motion for summary judgment.

**DONE** and **ORDERED** this _____10th_____ day of November, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

16